

FILED
JUL 1 7 2015
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

NATASHA IRBY,

WANDA IRBY,

**and**

DEMOND YOUNG,

    **Plaintiffs,**

**v.**        Civil Action No. 3:15cv428

BMW INC,
D/B/A AUTO CITY,

**and**

GENERAL MOTORS FINANCIAL COMPANY, INC.,

    **Defendants.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

  1.  This is an action by consumers alleging damages for violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§1691 et seq., the Credit Repair Organizations Act (CROA), 15 U.S.C. §§1679 et seq., and the Virginia Consumer Protection Act (VCPA) Va. Code §§ 59.1-196 et seq. Claims are also asserted for common law fraud, negligence, and declaratory relief. This action is brought against a used car dealer and the assignee that purchased the credit contract from the car dealer. The car dealer advertised that it specialized in sub-prime credit and in helping people who had been through bankruptcy. It lured the plaintiffs to its lot with a false promise to help Plaintiff Natasha Irby who had been through bankruptcy. Once at the lot, the dealer took a credit application from Natasha Irby but then denied to provide

her any credit. In violation of the ECOA, it never provided her an adverse action notice. Instead, the dealer then lured Plaintiff Demond Young to participate in a credit transaction by falsely promising that after six months it would switch him off the transaction and place Natasha Irby on it, and that it would thereby improve his credit score. After Plaintiffs agreed to the transaction, the dealer then sold the credit contract to a third party and has no ability to make good on its promise about that credit. Plaintiffs seek damages under federal and state law and a declaration that the falsely induced contract is not enforceable.

## JURISDICTION

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and the ECOA, 15 U.S.C. §1691e(f), and has supplemental jurisdiction of the state law claims regarding the same transaction and events under 28 U.S.C. § 1367(a).

## PARTIES

3.      Plaintiff Natasha Irby is a natural person who resides in Virginia. In this transaction, she is an applicant for credit within the meaning of the ECOA, as defined at 15 U.S.C. § 1691a(b) .

4.      Plaintiff Wanda Irby is a natural person who resides in Virginia. In this transaction, she is an applicant for credit within the meaning of the ECOA, as defined at 15 U.S.C. § 1691a(b) .

5.      Plaintiff Demond Young is a natural person who resides in Virginia. In this transaction, he is an applicant for credit within the meaning of the ECOA, as defined at 15 U.S.C. § 1691a(b) .

6.      Defendant BMW Inc. is a Virginia Corporation doing business as Auto City at 492 Cambridge Street, Fredericksburg, VA, 22405, and has as its registered agent Charla Fazelyar, at that same location.

7.      General Motors Financial Company, Inc. is a Texas corporation doing business in Virginia, does business both as GM Financial and as Americredit Financial Services, is a wholly owned subsidiary of General Motors Company, and has as its registered agent in Virginia, Corporation Service Company, Bank of America Center, 16th Floor, 1111 East Main Street, Richmond, Virginia, 23219.

## STATEMENT OF FACTS

8.      In mid-February 2015, Natasha Irby wanted to buy a car for her personal use and was looking at car advertisements on the internet.

9.      She saw a car advertised by Auto City on Craigslist.

10.     The Craigslist ad stated that Auto City specialized in sub-prime credit and could help people who had an open or discharged bankruptcy.

11.     Natasha Irby had filed for a Chapter 13 bankruptcy which was still open, and she called Auto City in response to this ad.

12.     When she called, she spoke with an Auto City employee named Zach.

13.     She discussed her bankruptcy with Zach and that she wanted financing with payments less than $400.00.

14.     Zach promised that Auto City could help.

15.     He told her that she would need a letter from her bankruptcy lawyer about the bankruptcy or a co-signer, and that Auto City would be able to get her credit.

16.     On or about Monday, February 23, 2015, Natasha Irby called Zach back to discuss how much of a down payment she should bring and to confirm that her bankruptcy would not be a problem.

17.     He told her to bring $2,000.00 for a down payment and assured her that her bankruptcy would not be a problem at Auto City.

18.     Later that week Natasha Irby called a third time to confirm the details about her coming to Auto City on Saturday because she did not want to make the long drive to Fredericksburg with a co-signer if she could not get credit.

19.     Zach assured her for a third time that she could get financed at Auto City despite her bankruptcy.

20.     The Craigslist ad and Zach's assurances were consistent with the representations on Auto City's website that states in part:

> **You have come to your one stop source for all your financing needs. Here in Auto City we specialize in Sub Prime credit. All inquiries are confidential, whether you have an Open or Discharged Bankruptcy, Foreclosures, Repossessions, Judgments, or Tax liens, WE CAN HELP. Our staff are very knowledgeable in the field of credit. You may contact any of our associates for a confidential inquiry about your personal history and we will gladly advise you the best we can on making a smart and wise decision. Please understand that there are a lot of imposters out there that claim that they specialize in 2nd or 3rd chance finance. We have over 15 years in the field of Auto Credit, and we don't disappoint.

> . . .

> **Have you been turned down in the past for an auto loan because you have bad credit or bankruptcy? Don't let these disappointments stop you from buying the used car you really want. Auto City specializes in 2nd chance bad credit auto loans with great low rates and has more than 25 auto loan lenders."

www.autocityva.com, last visited July 16, 2015.

21.     On its website, Auto City also claims to have a Bankruptcy Program and states in part:

> "Qualifying for an auto loan with a bankruptcy on your credit report can be very EASY!!
>
> Shop NO MORE and Say NO MORE!!
>
> At Auto City we have Multiple Lenders for folks in or out of bankruptcy. If you have recently gone through a bankruptcy and are now finding it difficult to obtain financing for an auto loan, don't despair. You won't have to wait years for the bankruptcy to come off your credit report before you can purchase a vehicle. It is possible to get an auto loan with bankruptcy on your credit report. You just need to know where to look. You have now found us.
>
> . . .
>
> Don't let bad credit or recent bankruptcy prevent you from going on with your life. Let Auto City help you get your next auto loan. With bankruptcy, bad credit or even no credit, at Auto City you can still experience auto finance made easy.
>
> Car loan & auto refinance experts for people with bad credit. Auto City and its lenders can provide a car loan calculator and car financing to buy used autos. Save money and time and apply online today!"

www.autocityva.com, last visited July 16, 2015.

22.     In reliance on Zach's promises and the advertisement, Natasha Irby asked her mother, Wanda Irby, to agree to co-sign for a car, and to drive with her to Fredericksburg to buy a car at Auto City.

23.     Wanda Irby agreed to be a co-signer for Natasha Irby and together they drove to Fredericksburg on Saturday, February 28, 2015.

24.     Plaintiff Demond Young, who is Natasha Irby's boyfriend, decided to accompany them for the trip.

25.     When they arrived at Auto City, both Natasha Irby and Wanda Irby went inside and completed the credit application process with Zach.

26.     He told them that their credit would be checked as part of the credit granting process.

27.     While they thought their credit was being checked, Natasha Irby went outside, looked at the car that had been advertised, and eventually decided to buy it.

28.     When Natasha Irby and Wanda Irby went back inside the dealership to buy the car, Zach told Natasha Irby that her bankruptcy meant that Auto City could not provide her credit.

29.     Natasha Irby was upset and Zach assured that it would be all right as long as another co-signer could be found to join Wanda Irby as the buyer on the transaction.

30.     Natasha Irby did not want a different co-signer because she wanted the transaction to be in her name.

31.     Zach then suggested that Demond Young be a co-signer with Wanda Irby on the transaction and Zach stated that after six months of payments then Auto City would substitute Natasha Irby for him on the transaction.  To further induce Mr. Young to co-sign, Zach told him that this transaction would help raise his credit score to over 700.

32.     Demond Young has no driver's license because of unpaid court costs and both Demond Young and Natasha Irby told Zach that fact because they were concerned that this fact would not allow the car to be registered if he was part of the transaction.

33.     Zach assured them that Demond Young's situation was no barrier and that he could be put on the transaction and still register the car and then Auto City would take him off the loan after six months anyway.

34.     Although unknown to Plaintiffs, these statements were false.

35.     The truth was that Auto City intended to sell the credit contract to an assignee as soon as possible, and that after this sale Auto City would have no ability to replace Demond Young with Natasha Irby.

36.     The truth was also that Demond Young's status with the Department of Motor Vehicles meant that only a temporary registration could be obtained but no permanent registration could be issued.

37.     The problem of someone in Demond Young's situation not being able to get a permanent registration from the Department of Motor Vehicles was known to Auto City because it has happened to other Auto City customers at least ten times.

38.     Although these truths were known to Auto City, Plaintiffs did not know them, and they agreed to accept the offer presented by Zach.

39.     After Plaintiffs agreed to the transaction, Natasha Irby then provided Auto City the down payment she had been asked to bring, and thus committed to the transaction before Auto City had prepared any documents for Plaintiffs to review.

40.     By the time Zach finally brought out papers to sign, the Plaintiffs had been at Auto City for over four hours, and Zach was hurrying them to sign before closing time.

41.     Demond Young and Wanda Irby signed each document where Zach indicated.

42.     One of the documents they signed was the Buyer's Order, attached as Exhibit A.

43.     On the line below the car's serial number on Exhibit A, Auto City should have indicated that the prior use of the vehicle was as a rental because it bought the car from one of the largest private car rental companies in America.

44. Although Exhibit A refers to terms on the reverse side, Auto City did not provide the Plaintiffs with a copy of the back page. The Plaintiffs were only provided with a copy of the front page.

45. Another document that was signed was a Retail Installment Sale Contract, attached as Exhibit B.

46. As Auto City expected, Auto City then assigned this credit contract to Defendant General Motors Financial Company, Inc., under its doing business as name Americredit Financial Services.

47. In March 2015, an Auto City manager, Josh, called and told Plaintiffs that Auto City was having trouble registering the car but they would get it resolved soon.

48. Auto City then sent a temporary registration to Plaintiffs that was valid only through the end of May 2015.

49. On or about March 30, Demond Young called Josh to find out when the permanent registration would arrive and Josh told him that Auto City could not obtain the permanent registration because Demond Young's license had been suspended.

50. Mr. Young told Josh that he wanted Auto City to either cancel the transaction and refund the down payment or switch Natasha Irby for him on the transaction so the car could be permanently registered.

51. Josh stated that he could do neither because the credit contract was now with GM Financial and the Plaintiffs would have to take matters up with them.

52. After that call, Natasha Irby repeatedly called Auto City but no one would talk to her about the transaction.

53. Auto City took no further steps to solve this problem.

54.     At the end of May 2015, the registration expired and Plaintiffs were then not legally able to drive the car.

55.     On June 1, 2015, through counsel, Plaintiffs sent a cancellation letter to both Auto and GM Financial. (Attached as Exhibit C).

56.     Although both Defendants received this letter, neither Defendant took steps to cancel the transaction.

57.     Since June 1, 2015, Plaintiffs have not driven the car.

58.     Even though it knows the Plaintiffs are not able to legally drive the car, GM Financial is continuing to demand payment. (GM Financial letter, June 11, 2015, attached as Exhibit D).

59.     Both Demond Young and Wanda Irby are very concerned that GM Financial will also be reporting negative credit information about this transaction that will harm them.

60.     The actions of Auto City show reckless disregard for the rights of Plaintiffs such that punitive damages should be assessed against Auto City.

61.     By agreeing to accept assignment of the credit contract, GM Financial has agreed to be liable for all the claims that Demond Young and Wanda Irby have against Auto City, subject to the cap set forth in that contract.

## COUNT ONE
## VIOLATION OF EQUAL CREDIT OPPORTUNITY ACT

62.     The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

63.     As a creditor under the ECOA, Auto City received completed applications for credit from each of the Plaintiffs and acted on those applications.

64.     Under the ECOA, Auto City was required by 15 U.S.C. § 1691(d)(1)  and Regulation B, 12 C.F.R. § 1002.9(a)(1)(i) to accurately notify each of the Plaintiffs of the action taken on their credit applications.

65.     Auto City took an adverse action against Natasha Irby and was required by 15 U.S.C. § 1691(d)(2) to provide her written notice of this adverse action.

66.     Auto City violated 15 U.S.C. § 1691(d)(2) by not providing Natasha Irby written notice of its adverse action.

67.     Auto City falsely informed Wanda Irby and Demond Young that they could be approved for a credit transaction where Demond Young would first be part of the credit and then after six months Auto City would substitute in Natasha Irby for Demond Young.

68.     The truth of the action taken on the credit applications of Wanda Irby and Demond Young was that Auto City would sell the credit contract a short time later and would have no ability to substitute Natasha Irby for Demond Young.

69.     Auto City violated 15 U.S.C. § 1691(d)(1) because it falsely informed Wanda Irby and Demond Young of the terms of the credit for which they were approved.

70.     As a result of the acts and omissions of Auto City in violation of the ECOA, Plaintiffs have suffered actual damages and injury, including but not limited to, stress, anguish, emotional distress, and suffering related to the fear, inconvenience and lost benefit of being forced to pay for a car they cannot drive and under different terms than the credit that was originally offered.

## COUNT TWO
## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT

71.     The allegations of Paragraphs 1 through 61 of the Complaint are incorporated by reference.

72.     Auto City was a supplier of goods in a consumer transaction as those terms are defined by the VCPA at Va. Code § 59.1-198.

73.     Auto City violated Va. Code § 59.1-200(A)(5) by misrepresenting that selling a car to Demond Young would not cause any problem with registering the car with the Department of Motor Vehicles and by charging $249.99 processing fee when the transaction could not be completely processed.

74.     Auto City violated Va. Code § 59.1-200(A)(8) by refusing to provide credit and sell the car on the terms originally offered to Natasha Irby, and then again by not selling it on the terms offered to Wanda Irby and Demond Young.

75.     Auto City violated Va. Code § 59.1-200(A)(14) by not disclosing the car's rental history, by not providing the terms on the back of the Buyer's Order, by misrepresenting that it would provide credit to Natasha Irby, by misrepresenting that Demond Young would be taken off the transaction in six months, by misrepresenting that adding Demond Young to the transaction would not be a problem, and by charging $249.99 processing fee when the transaction could not be completely processed.

76.     Auto City's violations were willful.

77.     In the alternative of willful, Auto City's violations were negligent and were not the result of a bona fide error as that term is used in Va. Code § 59.1-207.

78.     As a result of the acts and omissions of Auto City in violation of the VCPA, Plaintiffs have suffered actual damages and injury, including but not limited to, stress, anguish, emotional distress, and suffering related to the fear, inconvenience and lost benefit of being forced to pay for a car they cannot drive and under terms different than originally offered.

## COUNT THREE
## NEGLIGENCE

79.     The allegations of Paragraphs 1 through 61 of the Complaint are incorporated by reference.

80.     Auto City was negligent in telling Natasha Irby that it would extend credit to her if she showed up at its lot with a co-signer.

81.     Auto City was negligent in selling a car to Demond Young and in processing it in his name when it knew his license had been suspended.

82.     To avoid the problem raised by his lack of license but still include the value of his credit information, he could have been used as co-signer for the debt rather than a co-buyer of the car.

83.     As a direct and proximate result of Auto City's negligence, Plaintiffs have suffered actual damages and injury, including but not limited to, stress, anguish, emotional distress, and suffering related to the fear, inconvenience and lost benefit of being forced to pay for a car they cannot drive and under terms different than originally offered.

## COUNT FOUR
## FRAUD

84.     The allegations of Paragraphs 1 through 61 of the Complaint are incorporated by reference.

85.     Auto City misrepresented to Natasha Irby that it would sell a car to her on credit despite her bankruptcy if she brought a co-signer to its dealership.

86.     This misrepresentation was made to induce Natasha Irby and a co-signer to drive to its dealership with the down payment needed to buy a car.

87.     Auto City misrepresented that adding Demond Young to the transaction would not cause a problem with registering the car with the Department of Motor Vehicles.

88.     Auto City misrepresented that it would substitute Natasha Irby for Demond Young after six months of payments.

89.     These two misrepresentations were made to induce Plaintiffs to agree to the transaction by Natasha Irby paying her down payment and Wanda Irby and Demond Young signing the contract documents.

90.     Each of these misrepresentations was made knowingly.

91.     In the alternative of knowingly, these misrepresentations were made innocently or negligently sufficient to establish constructive fraud.

92.     Plaintiffs relied on the misrepresentations, traveled to Fredericksburg, agreed to the transaction, and paid the down payment.

93.     As a direct and proximate result of their reliance on Auto City's misrepresentations, Plaintiffs have suffered actual damages and injury, including but not limited to, stress, anguish, emotional distress, and suffering related to the fear, inconvenience and lost benefit of being forced to pay for a car they cannot drive and under terms different than originally offered.

## COUNT FIVE
## VIOLATION OF THE CREDIT REPAIR ORGANIZATIONS ACT

94.     The allegations of Paragraphs 1 through 61 of the Complaint are incorporated by reference.

95.     Because Auto City represented that it would improve Demond Young's credit rating in return for valuable consideration, Auto City meets the definition of a "credit repair organization" provided in 15 U.S.C. § 1679a(3)(A).

96.     Auto City violated 15 U.S.C. § 1679b(b) because it received this consideration before it performed the service it promised.

97.     Auto City violated 15 U.S.C. § 1679c(a) and (b) because it failed to provide the required federal notice about the right to cancel any contract with Auto City within three days.

98.     Auto City violated 15 U.S.C. § 1679d(a) because it began to provide the promised services and never obtained the necessary written contract.

99.     Auto City violated 15 U.S.C. § 1679e(c) because it did not provide copies of the required completed contract and notice.

100.    Because the credit contract included the promise to raise Demond Young's credit rating, it was a contract for services which does not comply with the CROA and is void under 15 U.S.C. § 1679f(c).

## COUNT SIX
## REQUEST FOR DECLARATORY RELIEF
## DEFENDANT GM FINANCIAL

101.    The allegations of Paragraphs 1 through 61 of the Complaint are incorporated by reference.

102.    The credit contract owned by GM Financial was induced in violation of the ECOA, the VCPA, and the common law of fraud.

103.    GM Financial was notified that the credit contract was canceled by the letter sent on June 1, 2015.

104.    Additionally, the credit contract is void and enforceable pursuant to 15 U.S.C. § 1679f(c).

105.    The credit contract should be marked canceled and all credit reporting about it deleted.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that the Court grant the following relief:

1.      Declaratory relief that no obligation is owed to GM Financial on the credit contract it bought from Auto City;

2.      Award Plaintiffs statutory punitive damages against Defendant Auto City for its violations of the ECOA in the amount of $10,000.00 to each Plaintiff;

3.      Award Plaintiffs one non-duplicative award of actual damages against Defendant Auto City for its violations of the ECOA, VCPA, and for its fraud and negligence, and award these damages also against GM Financial up to the cap set forth in the credit contract;

4.      Assess punitive damages under Virginia law against Defendant Auto City for its fraud;

5.      Assess punitive damages against Defendant Auto City under 15 U.S.C. § 1679g(a)(2) for its violation of CROA;

6.      Award Plaintiffs the amount of money paid to Auto City at the time of the transaction under 15 U.S.C. § 1679g(a)(1)(B);

7.      Award Plaintiffs at least a minimum of $500.00 for damages against Auto City for each separate violation under the VCPA;

8.      Award Plaintiffs treble actual damages or a minimum of $1,000.00 against Auto City for each separate willful violation of the Virginia Consumer Protection Act;

9.      Award Plaintiffs reasonable attorneys' fees against Defendants under the ECOA, the CROA, and the VCPA;

10.      Award Plaintiffs costs against each Defendant;

11.      Award prejudgment interest; and

12.    Award such other relief as may be just and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
Natasha Irby
Wanda Irby
Demond Young
By Counsel

By: Dale W. Pittman, VSB#15673
Counsel for Plaintiffs
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com

Thomas D. Domonoske, VSB #35434
461 Lee Avenue
Harrisonburg, VA 22802
(540) 442-7706
tomdomonoske@earthlink.net

Todd A. Knode, VSB #78701
COATES & DAVENPORT, P.C.
5206 Markel Rd Suite 200
Richmond, VA 23230
(804) 285-7000
(804) 285-2849 (Fax)
todd.knode@coateslaw.com