IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NATASHA IRBY,

WANDA IRBY,

and

DEMOND YOUNG,

    Plaintiffs

v.                                                    Civil Action No. 3:15-cv-428

BMW, INC., d.b.a. AUTO CITY, INC.

and

GENRAL MOTORS FINANCIAL COMPANY, INC.

    Defendants.

## MOTION FOR ORDER TO COMPEL ARBITRATION, DEMAND FOR ARBITRATION, STAY OF PROCEEDINGS & FOR MORE TIME TO FILE A MEMORANDUM IN SUPPORT

Now comes the defendant BMW, INC., a Virginia corporation, doing business as AUTO CITY, INC., ("AUTO CITY"), by counsel, and respectfully moves this Court for an Order 1) compelling the arbitration of the disputes which are the subject of this litigation, while simultaneously giving plaintiff this written notice of demand for arbitration, 2) to appoint an arbitrator, 3) to stay the above styled action pending arbitration and 4) for additional time to file a memorandum in support of this motion to compel arbitration. As grounds for the motion AUTO CITY states:

1. This action arises out of the sale of a motor vehicle by the defendant AUTO-CITY to the named plaintiffs at the motor vehicle dealership located in Fredericksburg, VA on or about 2/28/2015. A true copy of the BUYER'S ORDER is attached as Exhibit "A," and made a part hereof.

2. A true copy of the RETAIL INSTALLMENT SALE CONTRACT is attached describing the financial aspects of the transaction, as Exhibit "B."

3. A material component of the transaction entered into by and between the parties is the AGREEMENT TO ARBITRATE, a true copy of which is attached as Exhibit "C," and made a part hereof.

4. The arbitration agreement provides:

> By entering into this Agreement to Arbitrate ("Agreement"), Customers and Dealership, . . .agree, except as otherwise provided in this Agreement to settle by binding arbitration any dispute between them regarding: (1) the purchaser by Customers of the above referenced vehicle;[1] (2) any products or services purchased in connection with the Vehicle, (3) any financing obtained in connection with this transaction and/or (4) any dispute with respect to the existence, scope or validity of this Agreement. Matters that the Parties agree to arbitrate include but are not limited to, disputes related to the Retail Purchase Agreement and any documents incorporated therein by reference, (whether such reference is made in the Agreement or the document itself, . . . any alleged promises, representations and/or warranties made to or relied upon by the Parties, and any alleged unfair, deceptive, or unconscionable acts or practices.

5. It is fair to say that each and every allegation made by the plaintiffs in the COMPLAINT is covered by the breadth of the arbitration agreement.

6. As defendant has only recently retained counsel, and insufficient time remained before the filing deadline, counsel is filing a motion to compel arbitration within the time

---

[1] The vehicle is referred to as a 2013 Chevrolet Malibu, 1G11A5SA1DU134799

period required but does not have sufficient time to prepare and file a memorandum of law in support, within the set deadline.

7. Whereupon, does counsel move for an extra 10 days next following the deadline, of September 1, 2015, within which to supply a memorandum in support of its motion to compel. The new deadline being September 11th, 2015.

8. The arbitration agreement provides:

> **The arbiter(s) shall apply and be bound by the governing state and federal law when making the decision and award and shall only award those damages or other relief permitted by applicable law.**

9. Accordingly, the arbitration agreement, is subject to the arbitration procedure and requirements set forth in the Virginia Uniform Arbitration Act found at Va. Code Ann. §8.01-577 and §8.01-581.01 *et seq.*

10. In situations where an arbitration agreement fails to set forth the procedure for arbitration, Va. Code Ann. §8.01-581.03 provides : "If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint one or more arbitrators."

11. In accordance with Va. Code Ann. §8.01-581.03, the Defendant respectfully requests time within which to nominate an arbitrator, or to attempt to mutually agree upon an arbitrator.

12. After the Court appoints an arbitrator, Va. Code Ann. §8.01-581.04 provides that "the arbitrator shall appoint a time and place for the hearing...".

13. Given the existence of the arbitration agreement, Va. Code Ann. §8.01-577 requires, "Submission of any claim or controversy to arbitration pursuant to such agreement shall be a condition precedent to institution of suit or action thereon,...".

14. Further, Va. Code Ann. §8.01-581.02D provides: "Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefore has been made."

WHEREFORE, accordingly, the defendant moves the Court to enter an Order compelling arbitration, appointing an arbitrator, staying the above-captioned action pending the arbitration of the parties' disputes, and granting until September 11, 2015, for the defendant to supply the Court with a memorandum in support of the motion to compel arbitration.

BMW, Inc. d/b/a Auto City, Inc.

/s/Lee Robert Arzt

By _____
Of Counsel

Lee Robert Arzt, VSB# 13192
Attorney-at-Law
6802 Paragon Place, Ste 220
Richmond, VA 23230
T 804-282-9722
F 804-282-1048

Certificate of Service

This is to certify that the foregoing was sent via the ECF system employed in the UNITED STATES DISTRICT COURT, this 31st day of August, 2015.

/s/ Lee Robert Arzt
_____

**EXHIBIT A**

**AUTO CITY**
492 CAMBRIDGE ST
FREDERICKSBURG   VA   22405
(540)479-1505   (540)479-1520

## BUYERS ORDER

Purchaser's Name(s): Buyer 1: WANDA YVETTE IRBY
Buyer 2: DEMOND YAPHEL YOUNG
Address: [redacted]   Richmond   VA   23224
Home Phone: [redacted]   Cell Phone: ___   Work Phone: [redacted]
Social Security #: [redacted]   D.L./State I.D. #: [redacted]   Issuing State: VA   Exp. Date: 07/15/2016

Deal Number: 3487108
Date: 02/28/2015
County: Richmond City
DOB: [redacted]

The above information has been requested so that we may verify your identity in accordance with the USA Patriot Act. By signing below, you represent that you are at least 18 years of age and have authority to enter into this Agreement. The Odometer Reading for the Vehicle you are purchasing is accurate unless indicated otherwise. Please refer to the Federal Mileage Statement for full disclosure.

| YEAR | MAKE | MODEL/BODY STYLE | COLOR | STOCK NO. |
|---|---|---|---|---|
| 2013 | Chevrolet | Malibu | Black | 4801 |

| SERIAL NO. | ODOMETER READING | SALESPERSON |
|---|---|---|
| 1G11A5SA1DU134799 | 50290  ☐ Not Accurate | Zakhem Christopher M |

THE VEHICLE YOU ARE PURCHASING IS A **USED** VEHICLE
PRIOR USE DISCLOSURE: ☐ PREVIOUSLY LEASED   ☐ RENTAL   ☐ OTHER

### WARRANTY STATEMENT

Any warranties by a manufacturer or supplier other than our Dealership are theirs, **not ours**, and only such manufacturer or supplier shall be liable for performance under such warranties. We neither assume nor authorize any other person to assume for us any liability in connection with the sale of the Vehicle and the related goods and services. If we enter into a service contract with you at the time of, or within 90 days of, the date of this transaction, we may not limit or modify the implied warranties. CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY) THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

☐ **AS IS**: I UNDERSTAND THAT THIS VEHICLE IS BEING SOLD "AS IS" WITH ALL FAULTS AND IS NOT COVERED BY ANY DEALER WARRANTY. I UNDERSTAND THAT THE DEALER IS NOT REQUIRED TO MAKE ANY REPAIRS AFTER I BUY THIS VEHICLE. I WILL HAVE TO PAY FOR ANY REPAIRS THIS VEHICLE WILL NEED. The Dealer expressly disclaims all express and implied warranties, including any implied warranties of merchantability or fitness for a particular purpose.
☑ Used Vehicle Limited Warranty Applies. Our Dealership is providing the attached Limited Warranty in connection with this transaction. Any implied warranties apply for the duration of the Limited Warranty.
☐ You have purchased a Service Contract between you and ___

Signatures: /s/ Wanda Irby   & /s/ Demond Y Young

### TRADE-IN VEHICLE INFORMATION

| Year: | Make: | Model/Body Style: | Color: |
|---|---|---|---|
| | | | |

| Serial No: | Odometer Reading: ☐ Not Accurate |
|---|---|
| Trade-In Allowance: $0.00 | Balance Owed & Lienholder: $0.00 |

☐ DEPOSIT/ ☐ PARTIAL PAYMENT: The sum of $3,000.00 was received from you as a Deposit/Partial Payment. It is **not** refundable, except as set forth in this Buyers Order. In the case of a Deposit, we will refrain from selling the Vehicle for ___ days. X ___

☐ If the box is marked, this transaction involves dealer-arranged financing. Please see the paragraph titled "Notice of Dealer-Arranged Financing" on the reverse side. X ___

### OTHER MATERIAL UNDERSTANDINGS AND INTEGRATED DOCUMENTS

| | |
|---|---|
| SALE PRICE OF VEHICLE | $16,090.00 |
| OTHER GOODS/SERVICES | $0.00 |
| GAP | $0.00 |
| Credit Life/Disability/UnEmp | $0.00 |
| Optional VSI | $0.00 |
| PROCESSING FEE | $249.00 |
| TOTAL SELLING PRICE | $16,339.00 |
| LESS: TRADE-IN ALLOWANCE | $0.00 |
| PLUS: BALANCE OWED ON TRADE-IN | $0.00 |
| State Sales Tax | $661.73 |
| Pre-Delivery Fee | $0.00 |
| SUBTOTAL | $17,000.73 |
| DEALER'S BUSINESS TAX | $0.00 |
| Online Systems Filing Fee | $0.00 |
| SERVICE CONTRACT (Including Tax Of $ 0.00 ) | $0.00 |
| License / Registration / Title Fees (Including a Title Fee of $47.75) (Including a Temp Tag Fee of $0.00) | $67.75 |
| Inspection Fee | $0.00 |
| CASH BACK (if applicable) | 0.00 |
| TOTAL DUE | $17,068.48 |
| DEPOSIT / PARTIAL PAYMENT | $3,000.00 |
| UNPAID BALANCE DUE | $14,068.48 |

☐ **NO LIABILITY INSURANCE INCLUDED**

I have read and accept the terms and conditions of this Buyers Order, including those that appear on the reverse side, and hereby acknowledge that this Buyers Order is complete and accurately reflects the agreements between the Dealership and myself. I further acknowledge receipt of a copy of this Buyers Order. THIS ORDER COMPROMISES THE ENTIRE AGREEMENT AFFECTING THIS PURCHASE. NO VERBAL AGREEMENTS OR MODIFICATIONS WILL BE RECOGNIZED. THIS BUYERS ORDER IS NOT BINDING UPON EITHER DEALER OR PURCHASER UNTIL SIGNED BY AN AUTHORIZED DEALERSHIP REPRESENTATIVE.

/s/ Wanda Irby   02/28/2015
Purchaser   WANDA YVETTE IRBY   Date

/s/ Demond Y Young   02/28/2015
Purchaser   DEMOND YAPHEL YOUNG   Date

Accepted by Authorized Dealership Representative /s/ ___   02/28/2015   Date

[ VA-130 (formerly 8181122)
Copyright © 2003. ADP, Inc © 2007. Finance Express (7/10)

LAW 553-VA-eps 7/14

## RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE



EXHIBIT B

Dealer Number 12487-1-i-0-22632   Contract Number 3487108   02/26/2015

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| WANDA YVETTE IRBY<br>Richmond<br>Richmond City   VA 23224 | DEMOND YAPHEL YOUNG<br>Richmond<br>Richmond City   VA 23224 | AUTO CITY<br>492 CAMBRIDGE ST<br>FREDERICKSBURG   VA 22405<br>(540) 479-1505 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2013 | Chevrolet Malibu | 1G11A5SA1DU134799 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 3,000.00 |
|---|---|---|---|---|
| 23.99 % | $ 11,573.84 | $ 14,068.48 | $ 25,642.32 | $ 28,642.32 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
|  |  | Monthly beginning |
|  |  |  |
| Or As Follows: 66 | $388.52 | Monthly   Beginning 04/11/2015 |

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**Late Charge.** If payment is not received in full within 7 days after it is due, you will pay a late charge of 5 % of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose. Any implied warranties arising from a written warranty or service contract are limited to the duration of such written warranty or service contract.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**VSI AND OPTIONAL INSURANCE**
Choice of Insurer. If vendor's single interest insurance is required (as indicated below), or if you desire optional insurance, such as credit life insurance or credit disability insurance, you have the right to use alternative coverage or to buy insurance elsewhere from the agent or insurer of your choice. You may also buy required physical damage insurance from the agent or insurer of your choice. Your choice of agent or insurer will not affect our decision to extend credit or your credit terms.

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI Insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI Insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ 0.00 and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract. See above for more information.

Buyer Signs _/s/ Wanda Irby_   Co-Buyer Signs _/s/ Demond Y Young_   LAW 553-VA-eps 7/14 v1   Page 1 of 4

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including $ 661.73 sales tax) ........................................ $16,751.73 (1)
2. Total Downpayment =
   Trade-in _____
         (Year)     (Make)        (Model)
   Gross Trade-In Allowance ............................................. $ 0.00
   Less Pay Off Made By Seller ......................................... $ 0.00
   Equals Net Trade In ..................................................... $ 0.00
   + Cash ....................................................................... $ 3,000.00
   + Other ..................................................................... $ 0.00
   (If total downpayment is negative, enter "0" and see 4I below)
                                                                              $ 3,000.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2) ............................... $13,751.73 (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   A  Cost of Optional Credit Insurance
      Paid to Insurance Company or Companies.
      Life .................................................. $ 0.00
      Disability ......................................... $ 0.00      $ 0.00
   B  Vendor's Single Interest Insurance
      Paid to Insurance Company(ies). ......................... $ 0.00
   C  Other Optional Insurance Paid to Insurance Company or Companies ..... $ 0.00
   D  Optional Gap Contract ..................................... $ 0.00
   E  Official Fees Paid to Government Agencies ................ $ 0.00
      1) to  State of VA   for  Gross Receipt Tax ............... $ 0.00
      2) to _____      for _____ ................... $ 0.00
      3) to _____      for _____ ................... $ 0.00
   F  Government Taxes Not Included in Cash Price ............. $ 0.00
   G  Government License and/or Registration Fees ............. $ 20.00
   H  Government Certificate of Title Fees .................... $ 47.75
   I  Other Charges (Seller must identify who is paid and describe purpose.)
      1) to _____      for Prior Credit or Lease Balance ...... $ 0.00
      2) to State DMV      for DMV Filing Fee ................... $ 0.00
      3) to N/A            for N/A ................................... $ 0.00
      4) to Dealer         for Processing Fee ................... $ 249.00
      5) to Dealer         for Inspection ....................... $ 0.00
      6) to N/A            for Unemployment Ins ................. $ 0.00
      7) to N/A            for Pre-Delivery Fee ................. $ 0.00
      8) to N/A            for N/A ................................... $ 0.00
      9) to N/A            for N/A ................................... $ 0.00
      10) to N/A           for N/A ................................... $ 0.00
   Total Other Charges and Amounts Paid to Others on Your Behalf .... $ 316.75 (4)
5. Amount Financed (3 + 4) .................................................. $14,068.48 (5)

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before
_____, Year _____. SELLER'S INITIALS _____

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term ___N/A___ Mos. ___N/A___
                                     Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _____

Buyer Signs X _[signature]_  Co-Buyer Signs X _[signature]_

---

Insurance. You may buy the physical damage insurance this contract requires from anyone you choose who is authorized to sell such insurance in Virginia. Your choice will not affect our decision to extend credit or the terms of this contract. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked on Page 1.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

### Optional Credit Insurance

☐ Credit Life:   ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability: ☐ Buyer  ☐ Co-Buyer  ☐ Both

Premium:
Credit Life $ ___N/A___
Credit Disability $ ___N/A___
Insurance Company Name
___N/A___
Home Office Address
___N/A___

Credit life insurance and credit disability insurance are not required to obtain credit. You have the right to use alternate coverage or buy such insurance elsewhere. Your choice of insurer will not affect our decision to extend credit or the terms of this contract. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit Disability Insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

☐ _____   ___N/A___
   Type of Insurance       Term
Premium $ ___0.00___
Insurance Company Name
___N/A___
Home Office Address
___N/A___

☐ ___N/A___
   Type of Insurance       Term
Premium $ ___N/A___
Insurance Company Name
___N/A___
Home Office Address
___N/A___

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. Your choice of insurer will not affect our decision to extend credit or the terms of this contract.

I want the insurance checked above.

X _____
Buyer Signature                Date

X _____
Co-Buyer Signature             Date

THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE.

Returned Payment Charge: If any check you give us is dishonored or electronic payment you make is returned unpaid, we may, at our option, charge you $ 50.

LAW 553-VA-eps 7/14 v1   Page 2 of 4

OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **Your right to refinance a balloon payment.** A balloon payment is any payment other than a down payment that is more than 10% greater than the regular or recurring installment payments. If you use the vehicle primarily for consumer purposes, you have the right to refinance a balloon payment over an extended period with additional payments. The additional periodic payments will not be more than 10% greater than the regularly scheduled installment payments.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
   
   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   
   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law permits.
   If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
   If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   - You pay any payment (plus any late charges) more than 10 days late or not at all;
   - You give us false, incomplete, or misleading information on a credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreements in this contract.
   
   The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. You will also pay any collection costs we incur as the law allows.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

Buyer Signs X _[signature]_   Co-Buyer Signs X _[signature]_   LAW 553-VA-eps 7/14 v1   Page 3 of 4

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

5. **SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

6. **APPLICABLE LAW**
Federal law and the law of the state of our address shown on page 1 of this contract apply to this contract.

---

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**HOW THIS CONTRACT CAN BE CHANGED.** This contract, along with all other documents signed by you in connection with the purchase of the vehicle, comprise the entire agreement between you and us affecting this purchase. No oral agreements or understandings are binding. Upon assignment of this contract: (i) only this contract and addenda to this contract comprise the entire agreement between you and the assignee relating to this contract; (ii) any changes to this contract must be in writing, and the assignee must sign it; and (iii) no oral changes are binding. Buyer Signs X_____ Co-Buyer Signs X_____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements.

## NO LIABILITY INSURANCE INCLUDED

**NOTICE TO RETAIL BUYER:** Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X_____ Date 02/28/2015 Co-Buyer Signs X_____ Date 02/28/2015
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X_____  Address _____
Seller signs AUTO CITY  Date 02/28/2015  By X_____  Title GM

Seller assigns its interest in this contract to AMERICREDIT FINANCIAL SERVICES _____ (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse   ☒ Assigned without recourse   ☐ Assigned with limited recourse

Seller AUTO CITY   By _____   Title GM

LAW FORM NO. 553-VA-eps (REV. 7/14) U.S. PATENT NO. D400,782
©2014 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LAW 553-VA-eps 7/14 v1  Page 4 of 4

# AGREEMENT TO ARBITRATE

Dealership Name: AUTO CITY _____ Date: 02/28/2015 _____

Customer Name(s): WANDA YVETTE IRBY _____ DEMOND YAPHEL YOUNG _____

Vehicle Description: 2013 ____ Chevrolet ____ Malibu ____ 1G11A5SA1DU134799 ____

By entering into this Agreement to Arbitrate ("Agreement"), Customer(s) and Dealership, including any Assignee (collectively referred to as "the Parties") agree, except as otherwise provided in this Agreement, to settle by binding arbitration any dispute between them regarding: (1) the purchase by Customer(s) of the above-referenced Vehicle; (2) any products and services purchased in conjunction with the Vehicle; (3) any financing obtained in connection with the transaction; and/or (4) any dispute with respect to the existence, scope or validity of this Agreement. Matters that the Parties agree to arbitrate include, but are not limited to, disputes related to the Retail Purchase Agreement and any documents incorporated therein by reference (whether such reference is made in the Agreement or in the document itself), the application for and terms of financing for the transaction, the Finance Contract, any alleged promises, representations and/or warranties made to or relied upon by the Parties, and any alleged unfair, deceptive, or unconscionable acts or practices.

Notwithstanding any other provisions in this Agreement, the Parties agree they are not waiving their right to exercise any self-help or provisional remedy available by law or pursuant to an agreement between them. Nor is either Party required to arbitrate any individual claim that is filed and properly within the jurisdiction of a small claims court or equivalent state court. Until a Party entitled to do so requests arbitration, any Party to this Agreement may proceed with such other rights and remedies; provided, however, that neither Party waives the right to request arbitration under this Agreement by exercising other rights and remedies or by initially agreeing to litigate a claim in court. In addition, if a claim originally brought in a small claims court (or equivalent state court) is transferred or appealed to a higher trial court or if a new claim is asserted after the initial filing of such litigation, the Parties shall have the right to request arbitration under this Agreement.

This Agreement evidences a transaction involving interstate commerce. The parties acknowledge and agree that the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA) shall govern any arbitration under this Agreement. The party first demanding arbitration may select the applicable rules of any one of the following Nationwide Arbitration Organizations: JAMS (1-800-448-1660), 1920 Main Street, Suite 300, Irvine, California 92614 (www.jamsadr.com) or American Arbitration Association (AAA) (1-800-778-7879), 355 Madison Ave., Floor 10, New York, New York 10017-4605 (www.adr.org); except AAA will not arbitrate individual cases where the Dealership is the filing party, the customer has not agreed to arbitrate at the time of dispute and the case involves a consumer finance matter. A copy of the Arbitration Rules may be obtained by visiting the web sites indicated or by contacting the Organization directly. The Rules in effect at the time of the request for arbitration is made will govern.

"Consumer claims" shall be arbitrated in accordance with the consumer arbitration rules and fee schedule, if any, provided for in the Arbitration Rules of the Arbitration Organization selected. If the Dealership initiates the arbitration proceedings, it will pay the entire cost of the initial filing fees. If the Customer initiates the arbitration proceedings, the Customer will pay the initial filing fees specified by the Arbitration Rules up to the amount he/she would be required to pay if the claim were filed before a state or federal court of law having proper jurisdiction over the proceeding. The Dealership will, upon Customer's request, pay any portion of the initial filing fees that exceeds this amount. The Dealership will also pay any administrative costs for the arbitration proceeding reasonably incurred by the customer that exceed $750, regardless of which Party initiates the proceedings.

To initiate an arbitration proceeding, the demanding Party must notify the other Party, in writing, that it wishes to arbitrate a dispute. The "demand" for arbitration should briefly explain the basis for the dispute, list names and addresses of the Parties involved, and specify the amount of monetary damages involved and/or any other remedy sought. The arbitrator(s) shall be attorneys or retired judges and shall be selected in accordance with the applicable Arbitration Rules. Both Parties agree that the arbitration proceedings shall take place in the county and state where the Dealership is located and the transaction occurred. They further consent to the jurisdiction of the courts of said county and state for purposes of enforcing this Agreement and the decision of the arbitrator(s). If it is inconvenient for either Party to participate in arbitration proceedings in the county where the Dealership is located, the proceedings shall be held at a mutually convenient location agreed upon by the Parties in a separate written agreement.

The arbitrator(s) shall apply and be bound by governing state and federal law when making the decision and award and shall only award those damages or other relief permitted by applicable law. Either Party may demand, at any time, a written decision from the arbitrators setting forth the findings of fact and/or conclusions of law and further agree that the arbitration proceedings and the decision of the arbitrators shall be open to the public, even if the Rules selected provide otherwise. Nothing in this Agreement shall be interpreted as limiting or precluding the arbitrator(s) from awarding monetary damages or any other relief provided for by law. Furthermore, neither party is precluded from filing a complaint with the Office of the Attorney General of this State or from participating in a mediation program administered by the Attorney General or Better Business Bureau, but the Parties agree that by entering into this Agreement, they are waiving their right to a jury trial and their right to bring or participate in any class action or multi-plaintiff action in court or through arbitration. Once one of the Parties has demanded arbitration, binding arbitration is the exclusive method for resolving any and all claims between them. The decision of the arbitrator(s) shall be final and binding, except for any right of appeal provided by the FAA and the Arbitration Rules that governed the original arbitration proceedings. The cost of appeal shall be borne by the appealing Party.

If any term of this Agreement conflicts with the terms of any other document or agreement between the Parties, the terms of this Agreement shall prevail. If any part of this Agreement shall be declared unenforceable for any reason, the remainder of the Agreement shall remain enforceable. BY SIGNING BELOW, CUSTOMER ACKNOWLEDGES THAT HE OR SHE HAS READ THIS AGREEMENT TO ARBITRATE AND AGREES TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT. THIS AGREEMENT IS INCORPORATED BY REFERENCE INTO THE RETAIL PURCHASE AGREEMENT. IT MAY NOT BE MODIFIED OR AMENDED EXCEPT BY A SEPARATE WRITTEN AGREEMENT SIGNED BY CUSTOMER(S) AND AN AUTHORIZED DEALERSHIP REPRESENTATIVE.

_[signature]_____ 02/28/2015 ___   _[signature]_____ 02/28/2015 ___
Customer                     Date              Authorized Dealership Representative   Date

_[signature]_____ 02/28/2015 ___
Customer                     Date